Clerk, please call the first case this morning. 116-1339 for Group No. 1, Pez v. Plainfield Construction. Counsel may proceed. Thank you, Mr. Clerk. My name is Charles Austin. I'm the counsel. I'm going to be the plaintiff in this case. I wanted to begin by looking at the case of the early Virginia case. The lumbar MRI showed a bulge. The cervical MRI showed a disc protrusion and an extruded fragment. The EMG, or the Infection Velocity Test, was persistent with radiculopathy, so there is diagnostic confirmation of pathology. I think this case is about crimes and punishment. I think the plaintiff here has been punished by the commission for various things. Let's hone in. One of the issues you raise is that you are challenging the denial of a wage differential, right? Yes. Who's Dr. Malik? Malik is treating doctors and neurosurgeons now. In late 2009, did Malik say that the claimant had reached MMI and had no permanent restrictions and he released the claimant to return to his regular duty work without restrictions? Is that correct? He did do that. I think that note was from December 3rd, I believe, 2009. It was prior to November 18th, 2009. He was treated with 40-pound restrictions to save conditions permanent. Well, he said he gave a reason for that. He said he changed his opinion because the claimant repeatedly refused his recommended epidural injections or any other medical interventions. That's one of the crimes I think the plaintiff is being punished for. By the doctor, his treating doctor? I think the treating doctor punished him by flip-flopping, going from 40-pound restrictions, conditions permanent as of November 18th, 2009, to his recommendation of returning to regular duty. I think there was punishment. It was a flip-flop, intended. Well, I think the commissioner also punished the claimant. Well, but aside from that, we've got Dr. Philipson here. He also opined his findings were consistent with Malik's. They're revealing no evidence of any acute structural injury. The claimant reached MMI, so how do you get around Philips? Well, Philips said in his second report, he said concerning the lumbar MRI, he said, the lumbar MRI study showed the most significant compressive pathology aside from a disc bulge in L4-5 and L5-S1. Aside from me saying that there is some significant compressive pathology. No, he doesn't say that at all. Where do we find compressive other than self-reported symptoms by the claimant? Where do we find the medical of compressive? The sentence I just read is on. No, I know what you just read, that you're inferring that means compression, correct? Or does he say compression? The word is, shows no significant compression, compressive pathology aside from. I think that means that he regarded the disc bulge in L4, L5, L5-S1 to be a significant compressive pathology. Right, that's an inference that can be made, but also an inference can be made that that's not the case. Well. And who's to decide what's the proper inference to be made from those records and under what review standard are we restricted to? Well, we do know that the commission is entitled to make inferences, and, as a matter of fact, Mr. Tepper has given to the fines of that. I think that this approach is a punishment of the claimant by ignoring what Dr. Tepper calls compressive pathology. Well, with all due respect, the commission doesn't decide. The standard of review isn't whether or not one side or the other is being punished. This is a wage differential. The issue, as you well know, is whether or not the commission's decision is against a man at this weight. If you have the claimant's own treating neurologist saying he's fine, you have Dr. Phillips essentially saying the same thing.  Forget about crime and punishment. Okay. How is an opposite conclusion, based on the evidence produced at the hearing, how is an opposite conclusion clearly apparent? Well, I don't think we have an exact answer to the same thing as Dr. Phillips. And I pointed out to Justice Holdren, my inference from that, and mine about compressive pathology, is that there is a significant compressive pathology in that patient according to Dr. Phillips. Well, you can point to one passage in there, but you've got all this other evidence stacking up against his position, right? Well, that's true. There is other evidence stacking up against his position. I think Dr. Phillips is minimizing. He's making a fine thing, but he's minimizing it. And I'm not sure it should be disavowed. Well, I don't want to take up all your time on the wage differential. What are the other critical issues from your standpoint? What we're seeking is a wage differential. We've been talking about that. Right. The critical issue is that I think Arthur Friedan didn't find symptom magnification or alignment, but the commission did. So the commission made a credibility finding, I think, contrary to what the arbitrator did. Now, isn't that ultimately up to the commission? Doesn't the commission make the ultimate credibility findings? Well, I think there are standards set forth by the case of R.G. Thiel versus the commission. I think there's a substantial question here as to whether or not there's sufficient factual basis in the commission's findings and the commission's record to permit that finding to stand. The commission ignored the first F.C.E. and it dismissed Dr. Shawi's opinions, saying that he didn't examine the record, but he did examine all the imaging studies, the MRIs, and the near-conduction velocity test. Wasn't there an – there was an F.C.E. done here, right? Yes, that's correct. How many F.C.E.s were done? Three. The first one was criticized by Dr. Mallett for not having validity testing. The first one found that he could lift only 40 pounds. Based on that first F.C.E., the doctor issued a perjury restriction of 40 pounds. The second F.C.E. was ordered by Dr. Mallett, and that one petitioner became very – experienced great pain and he left that F.C.E. early without completing it, and it was exactly what the instructions encouraged him to do. If you're experiencing pain, you can terminate the test. Well, you were arguing those F.C.E.s on October 15, 2009, and November 9, 2011. You sort of argued they were invalid? Well, the third one, which was November of 2009, I can't remember which year. November 9, 2011? Is that the one you're talking about? The third F.C.E. – he completed the third F.C.E. by PTSIR, but their opinion was that he could have performed better. Well, there was two of them that said he was malingering or he was engaging in symptom magnification. Isn't that true? Didn't two of them suggest that? Well, I don't think they used the word symptom magnification. Well, the commission interpreted them as indicating that.  And I think that represents a change in opinion, a change in credibility of determinations compared to arbitrary probability. She found that the petitioner's current condition of ill-being is caused and related to the accident. So she didn't find the petitioner non-credible. She didn't find symptom magnification. What the commission did, I think that represents a change in determination as compared to the arbitrator. And I think the commission didn't set forth adequate reasons for their decision, particularly where they didn't even consider the first F.C.E. They didn't consider what Dr. Malin said, that he was issued a permanent restriction of 40 pounds, the commission's permanent, released in December, November 2009. Yes, his final visit was in April 2010. He doesn't use it. He never says, never addresses why he thinks the condition is approved or changed or why the prior recommendation is no longer valid. Dr. Showney was issued a median worth. Dr. Lombi also restricted him to 40 pounds. As I said, Dr. Malin issued a permanent restriction of 40 pounds also. And Dr. Malin's last visit doesn't explain why his opinion is any different from the opinion in December or November 2009. Regarding the wage differential, plaintiff made valiant efforts to find a new job. He shopped for his record on a booth and made an exhibit. Despite his diligent efforts, he couldn't find a new job. I think it's clear he suffered partial incapacity when pursuing his usual respiratory line of employment. And he's had impairment burdens as a result. So I think he's entitled to an award of wage differential. I think he's entitled to continued payment, which would also, because I heard Friday night he found that his condition, ill-being, his criminal case, caused him to let into the accident. Thank you very much. Thank you, counsel. You have time to reply. Thank you, Judge.  Thank you, Your Honor. If it pleases the court, counsel, Mark Matranda for the respondent, Plainfield Construction. The center of attention in the commission's decision are these FCE reports, none of which was valid. It's quite obvious that Dr. Malin, the treating physician, I believe he's a neurosurgeon, did not consider that first FCE to be completely kosher because he immediately ordered a second one. One was 928, the other one was 1015. And the petitioner, I think, had four out of five Waddell signs indicative of symptom magnification, and he failed seven out of ten validity criteria. And then was there a third one done? I believe that was the second. Was there a third, though? Pardon? Wasn't there a third FCE? Oh, there was, November of 2010. And that was also indicative of symptom magnification? Was that correct? Yes, Your Honor. It was, and by the way, it's my understanding that, I mean, Dr. Malin didn't refer the petitioner, nor did Dr. Phillips, nor even Dr. Chomey. I believe this came out in the record that this was arranged through his attorneys. Oh, what happened? The third. The third. October 15th, as with the October 2009 test, he failed several performance criteria, which the evaluator documented was indicative of symptom magnification. So the word symptom magnification isn't coming from the respondent or the commission. It's coming from these providers. In any event, the results showed less than full participation and the evaluator noted, quote, should not be used to project current work capacity since the worker could likely have functioned higher than willing. So these FCE tests were not indicative at all of what the man could do. The commission considered this. And more so than that, or in addition to that, the commission considered Dr. Malik. Let's go back to Malik. Opposing counsel says, and it is true that Malik, before his last examination and opinion, restricted the claimant to 40 pounds. Correct, Your Honor. After the first. After the first.  It's kind of hard to follow up on. Well, let's just focus on the, as the commission focused on Malik's last. Yes. Opposing counsel, let's just focus. Opposing counsel is saying why, if there's no explanation for the change between the last Malik opinion and the immediately preceding one. Well, there had been. And it's claiming that that's punishment by his doctor. I don't know about too much. Well, we're not going to doubt that. I said it's a claim. But tell me why the change and why that, is there any basis for that? Well, it's through Dr. Phillips. And so Dr., I believe Dr. Malik had seen the results from Dr. Phillips. And recall, Dr. Phillips, when he examined him for the second time, he said, I'm going to refer him for work conditioning. But between you and me and the lamppost, he's not going to make it through based on these behaviors we've seen. And sure enough, on January 21, 2010, when he went for the work conditioning, you know, more validity, inconsistencies, et cetera. I mean, the man is well below the Mendoza line for validity. When it comes to these various tests, you look at each and every one of them, there's a very high percentage of inconsistencies. It's never less than 50%. It's usually 75%, 80% of inconsistencies. Okay, so you're saying that that Phillips report, which was viewed and interpreted by Dr. Malik, is the explanation for Malik's change. In addition to Malik, you know, Matt, I wish not to speculate, but it is also possible that Dr. Malik, that his opinion was evolving as well. I think that it is important to focus on the Phillips exam, because when he saw a petition, he, meaning Dr. Malik, on February 3rd, he said he was in general agreement with the doctor's opinion. The doctor, Malik, looked at the work conditioning reports and the evaluator at the work conditioning report, of course I'm not going to find my notes right now, that's the way it goes, but on the 21st of January 2010, the physical therapist was noting high degree of invalidity. Okay, the last FCE, which apparently the record supports, was arranged by claimant's attorneys, because we had the two prior FCEs. Was Dr. Malik apprised of that last FCE when he made his final opinion? I believe not. I believe that the last opinion we have from Dr. Malik is April 7th. That's the date that the commission followed the NMI. When is the last FCE? It was after 11th. And again, I think from the commission's perspective, and certainly from ours, that November 9, 2010 test didn't show us anything any different from what had been done in October of 2009, or indeed the first test too, because the first test didn't have validity criteria. And again, I don't wish to speculate, but had validity testing been done, given what happened at the other two, are we really to believe that that first one was going to be totally, completely, and absolutely valid? I don't think so. So as far as Raskolnikov is concerned, I think he was guilty. So for whatever the crime and punishment aspects of this case are worth, the commission was not convinced that the petitioner was anything less than exaggerating his symptoms and thereby found him at maximum medical improvement, able to return to full duties effective April 7, 2010, as did his own physician. So there's sufficient evidence in the record to support the commission's determination, right? Absolutely, and I would have to say unequivocally. The wage loss issue, I think, is a non-starter for the simple reason that we have two basic criteria for wage loss. It doesn't meet the first one. It gets a full-duty release. So at that point, I think wage loss is a forgone issue. So I mean, I see that the man had medical treatment. He also was offered a lot of treatment, which he turned down. This is from Dr. Malik. And I think, if not the last time Dr. Malik saw him, maybe the second-to-last time, he was just not believing what the man was telling him, because even touching the man's leg produced a positive straight leg-raising response. So his responses were way off the charts. Now, I understand the counsel's argument. His client, he said, my client's not a liar. I'm not here to make such a statement. We're here just to review the record to see what the commission says. Yeah, and he says that he believes this. Well, that's possible too. But the commission didn't believe that he was unable to work or that he was limited in his work. The commission sifted the evidence. The inferences were all permissible. I don't think they, you know, reached a way out. It is very interesting, I would say, from, you know, working in the workers' compensation field for as many decades as I have, to see Dr. Malik in complete agreement with a Section 12 examiner. But, you know, that's another story for another day. The commission believed Dr. Malik and Dr. Phillips. They placed the weight on them. They placed no weight on those FCEs because there's really nothing to grab onto with those FCEs when you have an invalid result. Thank you. Thank you. Thank you, counsel. Counsel, you may reply. Yes, the last FCE was ordered by my office. The last FCE was after Dr. Malik's last visit with the plant. So it didn't affect his opinion as of April 7, 2010. And Dr. Malik never explained why he was making, whether he was reading the majority's findings in November and December 2009. He just said, clinically, the condition is unchanged. And the third FCE did say that it likely could have lifted more. It didn't participate fully. But the thing that strikes me about this case is that there's so much alignment among the FCEs. Every one comes out to approximately 40 pounds or medium duty work. So it's done three times. And they all have essentially the same inclusion. Dr. Mombiasi and Dr. Chami had the same inclusion also. And Dr. Malik had the same inclusion until that final visit. So there was a lot of evidence that he played his favor. I know that the commission has to weigh the evidence. But I think it was unfair in this case. Thank you, Judge. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. A written disposition shall issue.